St. Louis Southwestern Railroad Company of Texas v.
Louisiana & Texas Lumber Company.

Decided April 10, 1908.

**Carrier of Freight—Routing by Shipper—Failure to Observe—Measure of Damage.**

Carriers of freight are required to follow the instructions of shippers in routing goods received for shipment to a point beyond the line of the carrier. A violation of such instructions makes the carrier an insurer of the goods. But when the goods are promptly transported and tendered to the consignee, although over a route other than that designated by the shipper, the carrier cannot be held liable for damages resulting to the shipper by reason of the refusal of the consignee to receive the same, in the absence of evidence that the carrier knew that such special damages would result from a breach of the contract of shipment.

Appeal from the County Court of Angelina County. Tried below before Hon. T. W. Jordan.

*E. B. Perkins, Marsh & McIlwaine* and *J. S. McIlwaine,* for appellant.—The failure of a railroad company to communicate to its connecting line the direction that the goods are shipped in care of a certain railroad, resulting in their diversion to . another route than that directed, does not, in connection with such consequent diversion, amount to a conversion, and ipso facto make it liable for the value of the goods; and the owner or consignee must receive the freight, his remedy being limited to the damages, if any, occasioned by the diversion. Booth v. Missouri, K. & T. Ry., 37 S. W., 168; Southern Pacific Co. v. Booth, 39 S. W., 585; Baumbach v. Gulf, C. & S. F. Ry., 4 Texas Civ. App., 650; St. Louis S. W. Ry. v. Tyler Coffin Co., 81 S. W., 826.

The petition failing to allege that the defendant, at the inception

of the contract of carriage, had notice of the special necessity of making delivery at destination in accordance with shipping instructions and of the special damages likely to accrue in the event of not doing so, plaintiff could not recover special damages such as the difference between the price at which the thing shipped had been contracted to be sold and the price which it actually brought. Missouri, K. & T. Ry. v. Sproles & Vines, 15 Texas Ct. Rep., 187; Missouri, K. & T. Ry. v. Webb, 20 Texas Civ. App., 431; Missouri, K. & T. Ry. v. Belcher, 89 Texas, 428.

*E. J. Mantook*, for appellee.—Carriers of goods are required to follow the instructions given by the owner of the goods concerning their transportation whenever practicable, since, beyond doubt, a common carrier in forwarding goods beyond its own line is bound, as a general rule, to follow with fidelity the instructions of the shipper or suffer the risk of the deviation therefrom. Galveston, H. & H. Ry. Co. v. Allison, 59 Texas, 193; Texas & P. Ry. Co. v. Boggs, 40 S. W., 20; Booth v. M., K. & T. Ry., 37 S. W., 168; Texas & P. Co. v. White, 80 S. W., 641; Houston & T. C. R. R. Co. v. Scott, 89 S. W., 763; Inman v. St. L. S-W. Ry. of Texas, 14 Texas Civ. App., 39; Houston & T. C. R. R. Co. v. Buchanan, 94 S. W., 199; Cane Hill Cold Storage Co. v. S. A. & A. P. Ry. Co., 95 S. W., 751; Express Co. v. Kountze Bros., 8 Wall., 342; Hinckley v. N. Y. C. Ry. Co., 56 N. Y., 429; Johnson v. N. Y. C. Ry. Co., 33 N. Y., 610; Crogan v. Galena & C. U. Ry. Co., 17 Wis., 492; Georgia Ry. Co. v. Cole, 68 Ga., 623; Philadelphia Ry. Co. v. Peck, 17 Atl. 505; Lee v. Wabash Ry. Co., 94 S. W., 991; Hurst v. St. L. & S. F. Ry. Co., 94 S. W., 794.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellee against appellant to recover $173.94 as damages for the failure of appellant to follow appellee's instructions in routing a shipment of lumber made by appellee from Kennard, Texas, to Lima, Ohio. The trial in the Justice Court resulted in a verdict in favor of plaintiff for the full amount claimed. The trial *de novo* upon appeal to the County Court resulted in a judgment in favor of plaintiff for the sum of $75.

The record shows that the appellee is engaged in the manufacture and sale of lumber at Kennard, a station on the Eastern Texas Railroad in Houston County, Texas. In the months of March and June, 1904, appellee sold two bills of lumber to W. B. Bloom of Lima, Ohio. The aggregate price agreed to be paid by Bloom for said lumber, delivered on board cars at Lima, was $773.94. In this contract of sale it was expressly agreed that the lumber should be shipped into Lima over the Lake Erie & Western Railroad, and the purchaser was not required to accept any pay for the lumber if it came into Lima over any other railroad.

When the lumber was delivered to the Eastern Texas Railroad Company by appellee, it instructed said company to route the shipment *via* the Lake Erie & Western Railroad. The bill of lading given by said Eastern Texas Railroad Company contains the nota-

tion that the shipment is to be routed over the Lake Erie & Western Railroad, and the way bill given by the appellant company when it received the shipment from the initial carrier contains the same notation. The appellant failed to notify its next connecting carrier of this routing and the shipment was made into Lima over the Cincinnati, Hamilton & Dayton Railroad. When the lumber arrived at Lima, Bloom was notified of its arrival by the last named railroad company and he refused to receive same. Thereupon said railroad company notified appellee that the shipment was refused. Upon receipt of this notice appellee instructed said railroad to sell the lumber for appellee's account and remit the balance of the proceeds of the sale after deducting freight and expenses. In accordance with these instructions the lumber was sold at a net loss to appellee of $173.94, that being the difference between the net proceeds of the sale and the amount appellee would have realized had the lumber been received by the consignee.

The stipulation in the contract of sale that the lumber should be shipped on the Lake Erie road was due to the fact that Bloom was engaged in litigation with the Cincinnati, Hamilton & Dayton Railroad in regard to its methods of delivering lumber for his lumber yards, and he did not desire to have further business relations with said road. These facts were not made known to the initial carrier, nor to the appellant, and appellant had no notice of the fact that by the terms of the contract of sale Bloom could refuse to accept the lumber unless it was shipped over the Lake Erie road.

The petition alleges that the expenses of the sale charged to appellee by the Cincinnati, Hamilton & Dayton Railroad included the sum of $75 charged for demurrage, cartage and storage; but there is no evidence showing the amount of these charges, and no allegations that same were not necessary expenses of the sale or that the alleged charges were unreasonable.

The trial court's conclusions of law upon these facts were as follows:

"I find that the consignor had the right to route the shipment of freight.

"I further find that the defendant, not having received notice of the contract between plaintiff and the consignee, is not liable for special damages.

"I further find the measure of damages in this case to be the demurrage, cartage and storage on said shipment of lumber until it could be sold."

It is well settled that carriers are required to follow the instructions of shippers in routing goods received for shipment to a point beyond the line of the carrier, and if the carrier deviates from the instructions of the shipper and forwards the goods by a different route, or by a different conveyance from that designated by the shipper, such carrier becomes the insurer of the goods and can not avail itself of any stipulation in its contract limiting its liability for damages to said shipment. Galveston, H. & H. Ry. Co. v. Allison, 59 Texas, 193.; Booth v. Missouri K. & T. Ry. Co., 37 S. W., 168.

This rule, however, in no way conflicts with the general rule for the measure of damage for breach of contract of carriage which limits recovery for a breach of such contract to such damages as might reasonably be supposed to have been within the contemplation of the parties, at the time the contract was made, as a probable result of its breach.

Appellant having no notice of the terms of the contract of sale between appellee and Bloom, the consignee of the lumber, it can not be supposed that it was in contemplation of appellant at the time it received this shipment and entered into the contract of carriage, that a failure on its part to follow the routing instructions of appellee would result in the refusal of Bloom to receive the lumber and the damage to appellee caused thereby.

The lumber was promptly and safely transported to the point of destination, and the only damage claimed to have resulted from the failure of the appellant to follow the routing instructions was caused by the refusal of Bloom to receive the shipment, and, as we have before stated, was not such damage as might reasonably be supposed to have been in the contemplation of the parties at the time the contract of shipment was made, and therefore can not be recovered.

The charges for which the court below allowed recovery was damage resulting wholly from the refusal of the consignee to receive the lumber and was therefore as clearly special as the loss sustained by appellee in the difference between the contract price and that for which the lumber was sold, and if the amount of said charges had been shown by the evidence appellee could not recover same for the reason before indicated.

The undisputed evidence showing that appellant had no notice of the provisions of the contract of sale between appellee and Bloom which authorized the latter to refuse to accept the shipment of lumber if the routing instructions were not followed, and that all of the damage sustained by appellee was caused by the refusal of Bloom to receive the lumber, the judgment of the court below should be reversed and judgment here rendered in favor of appellant, and it has been so ordered.

*Reversed and rendered.*