MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS ET AL v.
E. E. CARPENTER ET AL.

Decided December 10, 1908.

**1.—Carriers—Interstate Commerce—Connecting Lines.**

Under the provisions of the Interstate Commerce Act, as amended by Congress in 1906, a carrier who receives property for transportation from one State into another is made liable for any loss, damage or injury to such property caused by a connecting carrier, and cannot restrict its liability to its own line.

**2.—Carriers—Delay in Transportation—Measure of Damages.**

The general rules as to measure of damages by delay in transportation of goods by a carrier stated.

**3.—Carrier—Connecting Lines—Loss of Market—Apportionment of Damages.**

The rule apportioning damages for injury or deterioration of property between the connecting carriers transporting it according to their respective degrees of negligence, is inapplicable to an action for loss by fall in the market price, incurred by delay in transportation.

**4.—Carrier—Negligence—Contract.**

In an action for damages by negligent delay of goods in transportation it was not admissible to prove an agreement by the general agent of the initial carrier, on the refusal of the consignee to receive them, that the goods should be shipped to and sold in another market and that such carrier would settle on the basis of the difference in price realized. The action, to permit this evidence, should have been brought on the agreement. And such agreement was not admissible against another of the connecting carriers not a party to it,

Appeal from the County Court of Collin County. Tried below before Hon. John Church.

*Coke, Miller & Coke* and *Garnett & Hughston,* for appellant, Missouri, K. & T. Ry. Co. of Texas.—The measure of damages for delay when goods are shipped for purposes of sale is the difference in the market value of the goods at the time of delivery and the time they ought to have been delivered. St. Louis & S. F. Ry. Co. v. McDurmitt Grain Co., 13 Texas Ct. Rep., 125; Texas & P. Ry. Co. v. Nicholson, 61 Texas, 491; Missouri P. Ry. Co. v. White & Best, 3 C. of A. C. C. (White & W.), 160.

In order for the delivering carrier to acquit itself of liability in whole or in part, it must show not only that damage occurred upon the initial or intermediate carrier, but it must show how much such damage was. Gulf, C. & S. F. Ry. Co. v. Edloff, 89 Texas, 458; Gulf, C. & S. F. Ry. Co. v. Cushney, 95 Texas, 312; Texas & P. Ry. Co. v. Adams, 78 Texas, 373; Schoul. on Bailments and Carr., 526; International & G. N. Ry. v. Startz, 97 Texas, 171-172.

There was no pleading that authorized a charge to the effect that appellant's general agent advised plaintiff to sell the oats to the best advantage.

*Glass, Estes & King,* for appellant, Kansas City So. Ry. Co.—It was hearsay as to this defendant and prejudicial in that it attempted to bind this defendant by a statement of its codefendant's agent. Houston & T. C. Ry. Co. v. Mayes, 44 Texas Civ. App., 31.

*Doggett & Clifton,* for appellees.

HODGES, ASSOCIATE JUSTICE.—The appellee Carpenter filed this suit against the Missouri, Kansas & Texas Railway Company of Texas, the Texarkana & Fort Smith Railway Company, and the Kansas City Southern Railway Company, in the Justice Court of Collin County, to recover damages for a delayed shipment of a car of oats. He obtained a judgment in that court for the sum of $109.05 against all of the defendants jointly and severally; and upon appeal to the County Court a verdict was returned in favor of the Texarkana & Fort Smith Railway Company and against the Missouri, Kansas & Texas Railway Company of Texas for $50 and the Kansas City Southern Railway Company for $59.05. The pleadings in the court below were oral, but from the record we gather that he sued for damages for an alleged unreasonable delay in the transportation of a carload of oats from Farmersville, in Collin County, to Janssen, Arkansas. There are also included items for demurrage which the appellee alleges he was compelled to pay, additional freight charges from Janssen to Mena, Arkansas, and the expenses of telephoning and telegraphing concerning the final disposition of the car.

The testimony shows that some time about the 1st of February, 1906, the appellee, Carpenter, entered into a contract with A. M. Parker, of Janssen, Arkansas, to ship him a carload of seed-oats to the latter place. The oats were to be delivered at Janssen, and the price to be

paid was forty-seven and one-half cents per bushel. The car was delivered to the appellant, Missouri, Kansas & Texas Railway Company of Texas, on the 8th day of February, 1906, but for some reason was not shipped out earlier than the 10th. It did not reach its destination until about the 27th following. The record contains no explanation of what caused this delay. One witness testified that three or four days was a reasonable time for transporting the car from Farmersville to Janssen. At the time the appellee delivered the oats to the agent at Farmersville he told the latter that it was very urgent that the oats should be delivered, and requested him to get them to destination as soon as possible. Upon the arrival of the oats Parker declined to receive them, assigning as a reason that they arrived too late to be used for planting purposes and that the farmers of that community, to whom he expected to sell, had purchased their seed-oats from other sources, and there was then no market at that place for seed-oats.

A claim for damages was filed by the appellee against the appellant Missouri, Kansas & Texas Railway Company of Texas for the full value of the entire car of oats. There was testimony, to which objection was made, however, that J. W. Allen, the general freight agent of the appellant Missouri, Kansas & Texas Railway Company of Texas, directed the appellee to sell the oats for what he could get and to report the deficit to him and that it would be taken up and settled. At any rate, the appellee Carpenter shipped the oats to Mena, Arkansas, and there sold them to N. M. Roach for thirty-four and one-half cents per bushel. The testimony was somewhat conflicting as to what the market value was at Mena and Janssen. The appellee Carpenter and his son testified that the market value for oats, such as these, for feeding purposes, was what was received from Roach. Roach testified that he bought the oats largely below their market value; that they were worth about forty-one cents per bushel. Other witnesses testified that there had been no decline in the market value of oats during the months of February and March, 1906.

There was no error in refusing the special charge requested by the appellant Missouri, Kansas & Texas Railway Company of Texas; that a verdict should be returned in its favor unless the delay at Farmersville was the proximate cause of the failure of Parker to receive the goods. This company was the initial carrier, issued a through bill of lading, and collected the entire freight charges. Under the provisions of the Interstate Commerce Act, as amended by Congress in 1906, a carrier who receives property for transportation from one State into another is made liable for any loss, damage or injury to such property caused by a connecting carrier, and can not restrict its liability to its own line. 1 Hutchinson on Carriers, sec. 235, 2 idem, p. 600.

We think the general charge of the court on the measure of damages is in many respects misleading and erroneous. In view of another trial we herewith give the rule in such cases as laid down by Hutchinson on Carriers, which seems to be generally accepted in this State as well as in other jurisdictions:

"Damages for delay in the transportation and delivery.—If the goods are intended for sale in the market at destination, and the carrier unreasonably and negligently delay their transportation, it is now universally agreed, whatever doubts may have been at one time entertained upon the subject, that the general rule by which the damages are to be computed, if goods of the particular kind have fallen in market value during the delay, or if they have depreciated in quality because of the delay, is the difference between the market value when the goods should have arrived and the value at the time of their delivery, the carrier being liable to the extent of the depreciation, with interest from the time when they should have been delivered. The time above spoken of 'when the goods should have arrived' is the time fixed by the contract, if any, and if not, then a reasonable time.

"In addition to this difference in market value, the carrier will be liable also for such other and incidental damages as naturally and proximately flow from the delay. If, therefore, the consignee is put to expense or trouble in making further applications or journeys to get the goods, or in searching for them, or in caring for them after their arrival until the next market day, or in making reasonable efforts to avert the loss or make it as light as possible, or in sending them elsewhere in order to find a market for them, he is entitled to recover for these injuries also. Where, by the delay, the goods have become worthless, the owner may recover as for their loss. Excuses for delay, such as strikes and kindred occurrences, have been considered in earlier sections.

"If, by reason of a delay, there is no market value for the goods at the place of destination, and in consequence they are shipped to another market, the measure of damages will be the difference in value on the market at destination in the condition and at the time they should have arrived and the sum they were sold for on the other market."

That portion of the court's charge wherein the jury is told that in the event a verdict is found against any or all of the defendants they should "apportion the damages, if any, among the defendants according to the degree of negligence, if any, of which you may find either has been guilty," was clearly erroneous and should not have been given. This is not a case in which the property transported had been damaged or has suffered deterioration in value by reason of delay in shipment, but is for the loss of a market occasioned by the delay.

The sixth paragraph of the charge, according to our construction of the pleadings and diagnosis of the nature of the suit, submits an issue not made by the pleadings. It authorizes a recovery against the Missouri, Kansas & Texas Railway Company of Texas upon the ground that J. W. Allen, its general freight agent, may have advised the appellee to sell his car of oats for the best price he could get and present his claim for the difference between what he realized and what Parker was to pay. We do not understand this action to be upon that agreement, but for the negligent failure to make prompt shipment. The fact that the aggregate sum found by the jury cor-

responds exactly with the amount of damages that would have been found in taking this measure shows the effect it had upon the jury in assessing the damages. While the court instructed the jury, if they found under this clause of the charge to return a verdict against the appellant, Missouri, Kansas & Texas Railway Company of Texas, yet it does not necessarily restrict it to that defendant. The absence of such a restriction may be responsible for a portion of the damages found being awarded against the appellant, Kansas City Southern Railway Company. It is true the appellee might have based his suit both upon the negligence charged and also upon the agreement, if any, made with the Missouri, Kansas & Texas Railway Company of Texas through an agent, concerning the disposition to be made of the oats after there had been a failure to ship them within a reasonable time. Such pleadings, however, if coupled with an action for negligence, should have been so framed as to show that one or the other was relied upon as an alternative ground of recovery. The record does not disclose what the prayer for relief was, whether against both or only one of the defendants below. In his statement of the nature of the suit, in the opening paragraph of his charge, the court treats it as an action for damages for a negligent delay in the shipment. If this be correct, then the court should not have instructed the jury in the manner he did concerning any action upon what Allen may have advised or directed.

The testimony of the two Carpenters as to what Allen, the freight agent of the Missouri, Kansas & Texas Railway Company of Texas, wrote concerning the disposition to be made of the oats, after having been notified by the appellee of the refusal of Parker to receive them, was inadmissible against the appellant, Kansas City Southern Railway Company, and upon objection made by that appellant the testimony should have been either excluded or limited in such manner as not to affect that company.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*