## PACIFIC MUT. LIFE INS. CO. OF CALIFORNIA v. METZGER.

### No. 3354.

Court of Civil Appeals of Texas. Beaumont.
Jan. 12, 1939.

Rehearing Denied Jan. 18, 1939.

Andrews, Kelley, Kurth & Campbell, W. M. Streetman, and John E. Cook, all of Houston, for appellant.

Ernest A. Knipp, of Houston, for appellee.

COMBS, Justice.

This is the second appeal of this case, the first being to the Galveston Court of Civil Appeals. See Metzger v. Pacific Mutual Life Ins. Co., 30 S.W.2d 428. The present appeal is before this court on transfer by the Supreme Court.

In 1922 one Marc Petiot gave the plaintiff, Miss Susan Metzger, appellee here, his promissory note for $1100 for money borrowed from her. Petiot carried a disability policy with the appellant insurance company, providing for disability benefits of $500 per month for total disability. In the early part of 1923 he claimed to be totally disabled and began drawing benefits from the Insurance Company at the rate of $500 per month. After he had drawn four such payments the Insurance Company appears to have become suspicious of Petiot's claim and their General Claim Agent, Edgar Harold, came to Houston, Texas, where Petiot lived, to investigate the matter. In the meantime appellee, and her sister, Miss Margaret Metzger, and her brother, B. V. Metzger, all of whom had loaned money to Petiot, had joined in a suit against Petiot for some $17,000. The Insurance Company in the meantime having held up payments to Petiot, he had filed suit for past due installments of the benefits, aggregating $4000, without prejudice to his right to claim future benefits as they should become due under the policy. And so the matter stood when Harold came to Houston. Appellee, Miss Susan Metzger, decided to confer with Mr. Westheimer, local agent of the Insurance Company, with reference to enlisting his aid in securing payment of the money due her. Upon going to his office she was informed that the General Claim Agent, Mr. Harold, was in the city and she conferred with him then and several times later. According

to her theory of the case Mr. Harold was very much interested in enlisting her aid in connection with his company's defense of the suit which Petiot had filed against it. The Metzgers had known Petiot for many years in Pennsylvania before he came to Texas. They had lived in the house with him since he came to Houston. They contended that Petiot had swindled them, had committed fraud against the Insurance Company in taking out the policy, and was in fact not disabled but a malingerer. According to the testimony of the Metzgers, Harold inquired of appellee, Miss Susan Metzger, the amount of her claim against Petiot and she told him about $1300, whereupon he told her to go see her lawyer, Judge Atkinson, and sue out a garnishment against the Insurance Company and "you will get your money." In that connection they testified that Harold told appellee that the company would have to pay Petiot something; that Petiot was demanding $10,000; that the company would not pay him that much, but that he could always get some doctor to say he was disabled and said "You can never tell what a jury will do." So at Harold's suggestion Miss Metzger went to her lawyer and sued out a writ of garnishment. She incurred expenses of some $50 in bond fees, court costs, etc., in that proceeding. In the meantime Petiot's suit against the Insurance Company was removed to the Federal Court and after about two years of investigation, in which Miss Metzger gave her active aid to Mr. Harold, Petiot seems to have abandoned the suit and left the country, and the suit was dismissed. Miss Metzger took judgment against Petiot in her suit without prejudice to the garnishment against the Insurance Company. The Insurance Company denied liability to Miss Metzger and this suit followed. On the first trial the trial court sustained a general demurrer to her petition. In reversing that judgment the Galveston Court of Civil Appeals held among other things that her petition stated a cause of action against the Insurance Company upon contract and also upon the principle of estoppel. We make reference to that opinion, cited supra, for a more complete statement of the pleadings. On the present trial plaintiff's evidence tended to support her theory of the case and fully supported the jury's findings, which were as follows:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that the defendant, Pacific Mutual Insurance Company of California, acting through Edgar Harold, promised the plaintiff, Susan Metzger, that if she would bring the garnishment suit which she did bring against it, she would be paid the amount of the debt owed her by Petiot by the said insurance company?".

The answer was "It did."

"Special Issue No. 2.

"Do you find from a preponderance of the evidence that said Edgar Harold was duly authorized by said insurance company to act as the company's agent in making such promise, if any such was made?"

The jury answered "It was."

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that the defendant, Pacific Mutual Life Insurance Company of California, acting through Edgar Harold, induced plaintiff, Miss Susan Metzger, to believe that it would pay to her the amount of her claim against Petiot if she would bring the garnishment suit which she did bring against it?"

The jury answered "It did."

"Special Issue No. 4.

"Do you find from a preponderance of the evidence that the said Edgar Harold was duly authorized, as the term authorized is hereinbefore defined for you, to act as the company's agent in making such inducements, if any such were made?"

The jury answered "He was."

Upon the verdict the trial court entered judgment in favor of Miss Metzger and against the Insurance Company for the debt, principal and interest, in the amount of $2,667.77. From that judgment the Insurance Company has appealed.

Opinion.

Appellant strenuously contends here that the statement of the agent, Harold, to Miss Metzger, that "If you will file a garnishment you will get your money," was in no sense an agreement that the Pacific Mutual Life Insurance Company would pay Miss Metzger the debt which Petiot owed her. That it was at most no more than the expression of an opinion that she might collect her money in that manner out of any amount which the company might have to pay to Petiot on his asserted claim. It is also insisted that any promise which Harold may have made on behalf of the company to pay Petiot's debt was in any event in violation of the statute of frauds, Ver-

non's Ann.Civ.St. art. 3995, and unenforceable.

■ Considering the second contention first, we think the alleged agreement was not in violation of the Statute of Frauds. It was not a promise to answer for the debt of another but an original undertaking, and was subject to performance within one year.

■ We are also of the view that appellant's contention that the agent Harold did not promise that his company would pay Miss Metzger the amount of the Petiot debt is also without merit. If Harold's statement to Miss Metzger, to the effect that "If you will file a writ of garnishment you will get your money," constituted the whole transaction between the parties, appellant's contention would no doubt be correct. But viewing the circumstances and conversations as a whole we think a contract did result. In the first place the Insurance Company was vitally interested in having Miss Metzger file the garnishment as a sort of pressure on Petiot. It is a reasonable inference that at the time these transactions and conversations took place the company was faced with large liabilities on the insurance policy which Petiot held. From Harold's statement to Miss Metzger it appears that the company at that time expected that it would have to pay to Petiot by way of compromise a sum in excess of the amount of her debt. Harold no doubt believed that Petiot's claim, although unjust, would be difficult to defeat. As Miss Metzger expressed it in one part of her testimony, Mr. Harold "wanted to buy the (Petiot) policy back." Sometime after Miss Metzger instituted her garnishment proceeding Harold wrote Miss Metzger on November 25, 1925, that his company had made no settlement with Petiot and stated in that letter "the present indications are, however, that we will not make any settlement as our case has recently been very materially strengthened," which indicates that the company had previously contemplated effecting a settlement of the claim of Petiot. We will note here, in view of Mr. Harold's denial that he made any promise to Miss Metzger to pay her claim, that her counsel sometime before the trial of this case, made demand on counsel for the insurance company that the correspondence between Mr. Harold and the company at the time of the transactions with Miss Metzger be produced in

court. But upon the trial of the case the correspondence was not produced, Mr. Harold stating that it was in the company's office in California. We have carefully considered the entire record and have reached the conclusion that the jury's finding to the effect that appellant, acting through its agent Harold, promised appellee that if she would bring the garnishment suit it would pay the amount of the debt owed her by Petiot, has ample support, and that the transaction and promise resulted in an enforceable contract.

But appellant insists that the very fact that Harold requested Miss Metzger to file the garnishment is so inconsistent with the theory that he agreed on behalf of his company to pay the Petiot claim as to completely negative the plaintiff's theory of contract. The contention is not sound. For, even though the insurance company did obligate itself to pay the amount, it was nevertheless to its advantage to have the collection made in the Petiot suit, from any judgment which Petiot might obtain against it. It was also to its advantage to have Miss Metzger file the garnishment as an aid to it in negotiating a settlement of the suit with Petiot.

■ We hold further that regardless of whether or not an enforceable contract resulted from the conversations and transactions between the agent Harold and Miss Metzger, that appellant is nevertheless liable on the principle of estoppel. The jury found that Mr. Harold, acting for his company, induced Miss Metzger to believe that the company would pay her the amount of her claim if she would bring the garnishment suit. That finding is abundantly supported by the evidence. Harold wanted the active aid of Miss Metzger in obtaining information which would aid his company in defeating the Petiot claim. He came to Houston and conferred with her several times and the record contains several lengthy letters written by Miss Metzger to him, giving him information. In one instance he wrote her for additional information which she gave. We think there can be no doubt that Miss Metzger believed that appellant would take care of her claim and that the agent Harold knew that she so believed. With that knowledge he induced her to file the garnishment suit and to press her claim in that manner, and to incur expenses in doing so. And under the circumstances it would be inequitable and

420

unjust to permit the Insurance Company to assume an inconsistent attitude and thus escape liability to her.

On the former appeal the Galveston Court of Civil Appeals had before it on the pleadings the issues which we have here discussed, and although the pleadings were amended in some respects on the present trial the issues were not changed. Upon the present trial the issues so made were found by the jury and were established by the evidence. We concur in the conclusions of the Galveston Court to the effect that appellee has a cause of action, both on contract and on the principle of estoppel.

The judgment of the trial court is affirmed.